Richard B. Teitelman, Judge,
dissenting.
I respectfully dissent. The principal opinion holds that Plaintiff is not entitled to a new trial even though a juror engaged in independent factual research that disputed Plaintiffs theory of liability, admitted his deliberations were influenced by his research and then communicated his findings to his fellow jurors. While Plaintiff is not entitled to a perfect trial, Plaintiff is entitled to a fair trial based on the evidence presented at trial leather than on extra-judicial information gathered through juror misconduct. Therefore, I would reverse the judgment and remand the case for a new trial.
The bar on independent juror research is an integral part of the resolution of disputes in an adversarial system because “[t]he legal limit of a jury’s information upon which to base their action is the evidence adduced at the trial.” Evans v. Klusmeyer, 301 Mo. 352, 256 S.W. 1036, 1039 (1923). For this reason, a juror’s independent factual research “has been termed reprehensible conduct” creating a presumption of prejudice that must be rebutted by the non-moving party. Middleton v. Kansas City Pub. Serv. Co, 348 Mo. 107, 152 SW.2d 154, 158 (1941) (citing Klusmeyer, 256 S.W. at 1039.). Therefore, as the principal opinion notes, the presumption of prejudice applies once it is established that a juror has gathered information extraneous to evidence at trial. Id. The presumption of prejudice relieves the moving party of the burden of proving prejudice and, instead, shifts the burden of demonstrating “that no prejudice resulted from it.” Travis v. Stone, 66 S.W.3d 1, 4 (Mo.banc 2002).
To determine whether prejudice resulted from a juror’s improper independent investigation, courts first must determine *717 whether the information discovered is material to the case. Travis, 66 S.W.3d at 6. Evidence is material if it has “some logical connection with the consequential facts.” State v. Stephens, 88 S.W.3d 876, 883-84 (Mo.App.2002) (quoting BLACK’S LAW DICTIONARY 991 (7th ed. 1999)).
The trial court’s analysis of Plaintiffs juror misconduct claim began with the clearly erroneous determination that the juror’s independent investigation into the weather forecast and the attendant possibility that Plaintiff slipped on water rather than soap is immaterial to the cause of Plaintiffs slip and fall. The extra-judicial information regarding the weather forecast is material to the case because the possible existence of water on the floor has an obvious logical connection to the central disputed issue of what caused Plaintiff to slip and fall. This initial error in finding that the information was immaterial necessarily led to the further erroneous conclusion that there was no prejudice because immaterial evidence, by definition, cannot be prejudicial. Stephens, 88 S.W.3d at 883. The trial court’s decision to overrule Plaintiffs motion for a new trial was erroneous from outset.
Although the determination that the evidence was immaterial should have ended the matter, the trial court also determined that there could be no prejudice because eight non-offending jurors testified credibly that “the interjection of the extraneous evidence” was an “isolated remark” that had no impact on the jury’s deliberations. Even though the trial court found that the eight non-offending jurors testified credibly that the offending juror’s independent research had no effect on their deliberations, the fact remains that the offending juror admitted that his extra-judicial research influenced his decision. When asked by Plaintiffs counsel what factors led to the jury’s verdict in favor of the Defendant, the offending juror stated that .he had “checked the weather forecast for th[e] day [of the accident] and the forecast was for eight to ten inches of snow.” Although each juror independently considers the evidence, the jury’s decision-making process involves collective deliberation with the goal of reaching a consensus. In this case, the offending juror’s admission that his independent research influenced his deliberations establishes that the jury deliberations were compromised even though other jurors' testified that there was no impact.
The principal opinion’s reliance on the fact that eight non-offending jurors testified that the juror misconduct had no impact on their decision is also inconsistent with this Court’s previous recognition that a juror’s independent factual research is uniquely prejudicial. In Travis, a juror visited the scene of. the accident at issue to help her “understand the testimony presented at trial.” 66 S.W.3d at 3. This Court reversed the denial of a motion for new trial based on alleged juror misconduct because “it must be assumed” that the juror’s investigation had an impact on the jury-⅛ decision, “which in-turn influenced [the juror’s] participation in the jury deliberations.” 66 S.W.3d at 6. The influence of the- extra-judicial information may have “subtly affected-the outcome of the case,” warranting a new trial even though there was no indication that the offending -juror had communicated the findings to the other jurors. Id. This Court further noted that in cases of juror misconduct involving improper gathering of extra-judicial information, it is “virtually impossible for anyone to demonstrate the effect of [the offending juror’s] interactions on the deliberations, especially given the fact that there is no contemporaneous record of jury deliberations.” Id.
*718 The principal opinion attempts to distinguish this case from Travis by noting that, in Travis, only- the juror who committed the misconduct testified, while, in this case, all nine jurors either testified or submitted affidavits stating that the extrajudicial information did not influence their deliberations. Travis, however, relied on Middleton, in which nine jurors submitted affidavits stating that the extra-judicial information had no influence on their verdict. Yet, in Middleton,. this Court held “[W]e think these affidavits had little probative value because of the common tendency of jurors to minimize the effect of misconduct.” 152 S.W.2d at 160,
In addition to the unequivocal denouncement of independent factual research by jurors, Travis is particularly instructive for' two additional reasons. First, unlike this case, the juror in Travis did not share the information with the other jurors. If the éxistence of extra-judicial information can prejudice jury deliberations when it was not presented to the remaining jurors, it follows that the prejudicial impact is amplified when, as in this case, the offending juror shared the improper information with other jurors. Second, the offending juror in Travis visited the scene of the accident to generally better understand the testimony in the case. In contrast, in this case, the offending juror researched the weather to investigate the very specific fact of whether there was a possibility that Plaintiff slipped and fell on water rather than soap. If the improper general investigation in Travis, was prejudicial, then the focused research in this case to test a specific theory of alternate causation should be. deemed prejudicial as well.
Given the high standard to overcome' the presumption of prejudice caused by juror misconduct and the modest weight given to jurors’-, -claims that they were not affected by extrinsic evidence, I would hold that the jurors’ testimony does not overcome the presumption of prejudice by showing “that no prejudice resulted from it.” Travis, 66 S.W.3d at 4, The judgment should be -reversed, and the case should be remanded for a new trial.